UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ALFREDO SALGADO-PAREIRA                    CIVIL ACTION NO. 25-2008

                                           SECTION P

VS.

                                           JUDGE TERRY A. DOUGHTY

PAM BONDI, ET AL.                          MAG. JUDGE KAYLA D. MCCLUSKY

REPORT AND RECOMMENDATION

Petitioner Alfredo Salgado-Pareira, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[1]  Respondents oppose the petition. [doc. # 11].  For reasons below, the Court should deny the petition.

Background

Petitioner is a citizen of Mexico.  He entered the United States of America on December 29, 2007.  [doc. # 11, p. 1].  "Petitioner was not admitted or paroled after being inspected by an immigration officer." *Id.*  He was taken into immigration custody on September 25, 2025, following a "random vehicle stop in which he was merely a passenger. [sic]."  [doc. # 1, p. 2]. On September 26, 2025, "A Notice to Appear (NTA) was issued charging Petitioner as inadmissible as being present in the U.S. without being admitted or paroled."  [doc. # 11, p. 1].

_____

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner filed this proceeding on December 11, 2025.  He primarily claims that he "is statutorily eligible for cancellation of removal under INA § 240A(b)" because "he is a thirty-nine-year-old long-time resident of the Chicagoland, Illinois area, who has lived in the United States for over eighteen years."  [doc. # 1, p. 1].  He also claims that his detention without a bond hearing violates due process.  *Id.* at 6.[2]

On January 21, 2026, an immigration judge granted Petitioner voluntary departure.  [doc. #s 11, p. 2; 11-2].  "He was ordered to voluntarily depart the United States by February 27, 2026.  However, upon information and belief, Petitioner remains detained pending his appeal of the immigration judge's denial of his application for cancellation of removal."  *Id.*  The immigration judge ordered that failure to depart "by the required date will result in an alternate order of removal to Mexico taking effect immediately."  [doc. # 11-2, p. 2].

Respondents opposed the petition on March 23, 2026.  [doc. # 11].  They argue primarily:

> Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). This conclusion is required under controlling precedent. The Fifth Circuit Court of Appeals recently held that aliens, like the Petitioner, who entered the United States illegally and who are not "clearly and beyond a doubt entitled to be admitted," "shall be detained" under 8 U.S.C. § 1225(b)(2)(A), until the conclusion of their removal proceedings. *Buenrostro-Mendez v. Bondi*, No. 25-20496, ---- F.4th ----, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026).

---

[2] Petitioner states that he "is a named class member in *Castañon Nava et al. v. Dep't of Homeland Security et al.*, No. 18-cv-3757-RRP (N.D. Ill.), which challenged ICE's unlawful use of administrative warrants and indefinite detention practices."  [doc. # 1, p. 2].  He adds, "Petitioner's arrest absent a judicial warrant and subsequent indefinite detention fall squarely within the unlawful practices challenged in *Nava*."  *Id.* at 7.  Petitioner, however, does not ask this Court to enforce or recognize any judgment or ruling from *Castanon Nava*.  Thus, the undersigned does not recognize any claim or ground for relief arising from Petitioner's statements.  To the extent Petitioner wishes to join the class in that proceeding, *Castañon Nava* provides a process by which individuals can seek to join the plaintiff class.  *See* Referral Form: *Castañon* Nava Settlement Violations, available at https://immigrantjustice.org/ referral-form-castanon-nava-settlement-violations-formulario-de-remision-sobre-violaciones-del- acuerdo-castanon-nava/ (last visited April 24, 2026).

*Id.* at 1. They also argue that "Petitioner's mandatory detention does not violate due process under the Fifth Amendment." *Id.* at 6.

Petitioner did not file a reply.

## Law and Analysis

### I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to a bond hearing. The Court should dismiss his statutory claim accordingly.

### II. Due Process

3

Petitioner claims that the Due Process Clause entitles him to a bond hearing.  In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States.  He was detained for expedited removal.  An asylum officer rejected his credible fear claim.  Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute.  Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights.  In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, two aliens were held pending removal after final order of deportation.  However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

4

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On January 21, 2026, an immigration judge ordered him to voluntarily depart, and Petitioner thereafter chose to appeal, which will likely extend his detention until the BIA decides his appeal. Petitioner's detention will likely end when his alternative order of removal to Mexico becomes final or if the Board of Immigration Appeals rules in Petitioner's favor. Accordingly, the Court should deny Petitioner's claim.

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Alfredo Salgado-Pareira's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge